# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| REENA CRISLER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 14-1061-CM |
| | ) |
| MATTHEWS RICHARDS HEALTHCARE | ) |
| MANAGEMENT, LLC, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

Plaintiff Reena Crisler filed suit against defendant Matthews Richards Healthcare Management, LLC, seeking a declaratory judgment; damages under the Kansas Consumer Protection Act ("KCPA") and the Fair Debt Collection Practices Act ("FDCPA"); and rescission of her contract with defendant. This matter is before the court on defendant's Motion to Dismiss for Improper Venue and Lack of Personal Jurisdiction, or in the alternative, Motion to Transfer Venue to the United States District Court for the Western District of Missouri (Doc. 6). For the following reasons, the court denies defendant's request to dismiss the case, but grants the alternative request to transfer the case to the Western District of Missouri.

## I. Background

In November 2010, plaintiff Reena Crisler suffered injuries following an auto accident in Wichita, Kansas. In January 2011, plaintiff—who was concerned about rising health care costs associated with her injuries—spoke with an attorney about filing a lawsuit regarding the accident. Plaintiff's attorney connected plaintiff with defendant, hoping defendant could assist with plaintiff's health care costs. Defendant's business involves advancing health care expenses on behalf of an injured plaintiff while the plaintiff pursues separate personal-injury claims. The parties entered an

-1-

agreement obligating defendant to perform such services while plaintiff pursued her personal-injury claim.

Plaintiff signed the contract from her residence in Wichita, Kansas. Defendant signed the contract at its office in Missouri. Plaintiff received benefits pursuant to the contract; received a call at her Wichita residence from defendant to discuss medical care; attended medical appointments arranged by defendant; and incurred health care related expenses as a result. On multiple occasions, defendant sent communications to plaintiff in Wichita or to health care providers in Wichita.

In May 2011, plaintiff received her first bill from defendant and decided to cancel the arrangement. Plaintiff asserts that defendant continued to submit payments to health care providers through October 2011. And plaintiff received demands for payments that she believes are excessive. Additionally, defendant intervened in plaintiff's personal-injury lawsuit in an attempt to collect payment from plaintiff. As a result, plaintiff filed this action in Sedgwick County, Kansas. Defendant removed the case to federal court and filed the instant motion.

## II. Personal Jurisdiction

### A. *Legal Standard*

A plaintiff opposing a motion to dismiss for lack of personal jurisdiction bears the burden of establishing that exercise of personal jurisdiction over the defendant is proper. *Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 456 (10th Cir. 1996). If the motion to dismiss is submitted before trial on the basis of affidavits and other written materials, the plaintiff need only make a prima facie showing. *Id*. Ultimately, the plaintiff must prove the factual basis for jurisdiction by a preponderance of the evidence at trial. *Id.* But on a pre-trial motion to dismiss, the court resolves all factual disputes in favor of the plaintiff. *Id*. If the plaintiff makes the required prima facie showing, "a defendant must present a compelling case demonstrating 'that the presence of some other

considerations would render jurisdiction unreasonable.'" *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

### B. Kansas Long-Arm Statute

The court evaluates whether it has personal jurisdiction under the forum state's long-arm statute and constitutional due process requirements. *Capitol Fed. Sav. Bank v. E. Bank Corp.*, 493 F. Supp. 2d 1150, 1158 (D. Kan. 2007). At times, Kansas courts have employed a two-step analysis to determine personal jurisdiction—looking first to the Kansas long-arm statute, Kan. Stat. Ann. § 60-308(b), and then to the United States Constitution. *Travel Mktg. Assocs. v. Theatre Direct Int'l*, No. 01-2579-CM, 2002 WL 31527737, at *2 (D. Kan. Oct. 8, 2002) (citations omitted). But "[t]he Kansas long arm statute is liberally construed to assert personal jurisdiction over nonresident defendants to the full extent permitted by the due process clause of the Fourteenth Amendment to the U.S. Constitution." *Volt Delta Res., Inc. v. Devine*, 740 P.2d 1089, 1092 (Kan. 1987) (citations omitted). Many courts therefore proceed directly to the constitutional due process question. *See, e.g.*, *OMI Holdings*, 149 F.3d at 1090; *Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.*, 17 F.3d 1302, 1305 (10th Cir. 1994); *Volt Delta Res., Inc.*, 740 P.2d at 1092. Here, because the parties have addressed both Kansas and federal law, the court will discuss both.

A Kansas court may exercise jurisdiction over a person who enters "into an express or implied contract, by mail or otherwise, with a resident of this state to be performed in whole or in part by either party in this state." Kan. Stat. Ann. § 60-308(b)(E); *Universal Premium Acceptance Corp. v. Oxford Bank & Trust*, 277 F. Supp. 2d 1120, 1126 (D. Kan. 2003). Either the actual or anticipated state of residence from which payment pursuant to a contract originates can be evidence that one party

expected a contract to be performed as least in part within that state. *Universal Premium Acceptance Corp.*, 277 F. Supp. 2d at 1126.

Here, the Kansas long-arm statue subjects defendant to the court's jurisdiction. Partial performance of the contract within Kansas is implied by the contract. Plaintiff resided in Wichita, Kansas, when she signed the contract. The contract required plaintiff to provide defendant with plaintiff's insurance information and all correspondence relating to her injury and subsequent claims. It is reasonable to assume that plaintiff would perform these contractual obligations from her residence in Kansas. Furthermore, it is apparent that both parties expected medical care and payments to defendant from plaintiff and plaintiff's medical providers to originate within Kansas. Given the liberal construction of the Kansas long-arm statute, the court finds that it has statutory long-arm jurisdiction over defendant.

### C. Constitutional "Minimum Contacts" Analysis

The second question in determining whether defendant is subject to the court's personal jurisdiction is whether the defendant has sufficient "minimum contacts" with the state of Kansas to satisfy the constitutional guarantee of due process. *Equifax Servs., Inc. v. Hitz*, 905 F.2d 1355, 1357 (10th Cir. 1990). Sufficient "minimum contacts" can be established in one of two ways. *Topliff v. Atlas Air, Inc.*, 60 F. Supp. 2d 1175, 1178 (D. Kan. 1999). First, "[g]eneral jurisdiction lies when the defendant's contacts with the forum state are so continuous and systematic that the state may exercise personal jurisdiction over the defendant, even if the suit is unrelated to the defendant's contacts with the state." *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1533 (10th Cir. 1996). Second, "[s]pecific jurisdiction exists when a defendant purposely avails himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws, and

the claims against him arise out of those contacts." *Topliff*, 60 F. Supp. 2d at 1178 (citing *Kuenzle*, 102 F.3d at 455). Only the specific jurisdiction inquiry is relevant here.

In specific jurisdiction analysis, the court must evaluate the quality and quantity of defendant's contacts with the forum state to determine whether defendant purposefully availed itself of the privilege of conducting business in the forum state. *OMI Holdings*, 149 F.3d at 1092. Although agreements alone may not establish minimum contacts, "parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for the consequences of their activities." *TH Agric. & Nutrition, LLC v. Ace Eur. Grp. Ltd.*, 488 F.3d 1282, 1287–88 (10th Cir. 2007) (quoting *Burger King*, 471 U.S. at 473). The court must examine the parties' "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Id.* at 1288 (quoting *Burger King*, 471 U.S. at 479) (additional quotation marks omitted).

The quality and quantity of defendant's contacts establish sufficient minimum contacts with Kansas:

- Defendant reached into Kansas to establish a continuing business relationship with plaintiff, in which defendant paid for plaintiff's medical care.
- Defendant knew that plaintiff was a Kansas resident when the parties entered the contract.
- Defendant arranged medical care for plaintiff in Kansas and advanced payments to medical providers in Kansas.
- Defendant called plaintiff at her home in Kansas to discuss medical care.
- Defendant sent letters confirming medical appointments to plaintiff's home and plaintiff's medical providers.
- Defendant intervened in plaintiff's personal-injury lawsuit in Kansas.

Plaintiff must also establish that her claims arise out of defendant's contacts with Kansas. Given the nature of the contacts identified above, the causation element is established. The contract serves as the basis for plaintiff's claims. As established above, defendant had numerous contacts with Kansas based on its contractual relationship with plaintiff. Plaintiff's claimed injury—caused by defendant's billing practices allegedly in violation of state and federal law—arises directly from the parties' agreement.

### D. *"Traditional Notions of Fair Play and Substantial Justice"*

If the court finds minimum contacts, the court must "consider whether the exercise of jurisdiction offends 'traditional notions of fair play and substantial justice.'" *OMI Holdings*, 149 F.3d at 1091 (citation omitted). In determining whether an exercise of jurisdiction is so unreasonable as to violate "traditional notions of fair play and substantial justice," the court considers:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies.

*Id.* at 1095 (citing *Asahi Metal Indus. Co. v. Superior Court of Cal., Solano Cnty.*, 480 U.S. 102, 107 (1987)). The court examines each factor below.

#### *(1) Burden on Defendant*

In weighing defendant's burden, important considerations are the distance and financial burden defendant will incur litigating in the plaintiff's chosen forum. *Id.* at 1096; *Black & Veatch Constr., Inc. v. ABB Power Generation, Inc.*, 123 F. Supp. 2d 569, 575 (D. Kan. 2000). Although defendant will have to litigate outside its home forum, Kansas is a neighboring forum to Missouri. Litigating in neighboring Kansas is not a hardship that places an unreasonable burden on defendant. Electronic filing, email communications, and telephone conferences reduce judicial concerns regarding distance

and financial hardships of litigating in foreign jurisdictions. Further, defendant previously intervened in plaintiff's personal-injury claim. Defendant's intervention demonstrates its ability to litigate in Kansas. If the case goes to trial, defendant would travel to Kansas. But expenses incurred by traveling a relatively short distance to a neighboring forum do not readily create a severe financial burden on defendant. This factor weighs in plaintiff's favor.

### *(2) Kansas's Interest*

"States have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors." *OMI Holdings*, 149 F.3d at 1096 (further citations omitted). Plaintiff allegedly suffered injuries as a result of defendant's actions. This factor therefore weighs in favor of plaintiff's chosen forum.

### *(3) Plaintiff's Interest in Convenient and Effective Relief*

The third factor—plaintiff's interest in convenient and effective relief—also favors plaintiff. This factor examines plaintiff's ability to pursue her claims if forced to litigate outside her chosen forum. *Id.* at 1097. Plaintiff argues that she has a significant interest in litigating in Kansas due to the location of witnesses and records related to her claim. Plaintiff also asserts that litigating outside Kansas is burdensome to her, but does not provide details regarding why this is true. While transporting witnesses and business records in the event of a trial is likely inconvenient, such inconveniences do not foreclose plaintiff's ability to litigate her case. This factor only slightly favors plaintiff because she likely could continue litigating her claim if forced to do so in Missouri.

### *(4) Judicial Interest in Efficient Resolution of Controversies*

The court weighs the efficiency of litigation by looking at (1) where witnesses are located; (2) where the alleged wrong occurred; (3) the governing law; and (4) whether jurisdiction is necessary to avoid conducting litigation in a piecemeal fashion. *OMI Holdings*, 149 F.3d at 1097 (further citations

omitted). Plaintiff's assertion that witnesses and records relevant to the claim are located in Wichita, Kansas, is prima facie evidence that Kansas courts might be best suited to efficiently resolve this dispute. Plaintiff asserts that the underlying wrong—defendant's breach of contract—occurred in Kansas. But the parties entered the contract "under the laws of the State of Missouri." (Doc. 1-1, ¶ 23.) Nonetheless, at a minimum, Kansas law governs plaintiff's KCPA claims. These considerations tip in favor of plaintiff for the fourth factor.

### *(5) States' Shared Interest*

For the fifth factor, the court considers "whether the exercise of personal jurisdiction by Kansas affects the substantive social policy interests of other states or foreign nations." *OMI Holdings*, 149 F.3d at 1097 (citing *Asahi Metal Indus. Co.*, 480 U.S. at 115). Kansas has an important public policy interest in protecting its residents from injuries inflicted by out-of-state residents. This interest includes protecting consumers in contractual and debt collection disputes. There is no reason adjudication of this case in Kansas courts affects or is contrary to the public policy of Missouri. This factor weighs in plaintiff's favor.

### *(6) Conclusion*

Each of the above factors weighs in plaintiff's favor such that the court's exercise of jurisdiction over defendant is reasonable. Adjudicating the case in Kansas will not violate traditional notions of fair play and substantial justice.

### *E. Conclusion - Personal Jurisdiction*

The exercise of personal jurisdiction over defendant is proper because each element of personal jurisdiction is satisfied. The Kansas long-arm statute is satisfied on the basis of a contract to be performed in whole or in part within Kansas. Defendant has sufficient minimum contacts with Kansas, and plaintiff's claims arise out of defendant's contacts. Additionally, the exercise of jurisdiction does

not offend traditional notions of fair play and substantial justice. The court therefore denies defendant's motion to dismiss for lack of personal jurisdiction.

## III. Venue

### *A. Legal Standard*

A civil action may be brought in:

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b); *see also Mohr v. Margolis, Ainsworth & Kinlaw Consulting, Inc.*, 434 F. Supp. 2d 1051, 1058 (D. Kan. 2006).

Whether to dismiss a case for improper venue "lies within the sound discretion of the district court." *Pierce v. Shorty Small's of Branson Inc.*, 137 F.3d 1190, 1191 (10th Cir. 1998) (citations omitted). "Upon a defendant's challenge to venue, the plaintiff has the burden of establishing that venue is proper in the forum state." *Mohr*, 434 F. Supp. 2d at 1058 (citation omitted). If a plaintiff pleads multiple claims, "venue must be proper for each claim." *Gen. Bedding Corp. v. Echevarria*, 714 F. Supp. 1142, 1144 (D. Kan. 1989) (citing *Beattie v. United States*, 756 F.2d 91, 100 (D.C. Cir. 1984)). Additionally, the court may consider affidavits and other material beyond the allegations in the complaint in deciding a motion to dismiss for improper venue. *Pierce*, 137 F.3d at 1191. "Generally, the plaintiff's choice of forum is given great deference." *M.K.C. Equip. Co. v. M.A.I.L. Code*, 843 F. Supp. 679, 683 (D. Kan. 1994). "The burden on the party seeking to overcome the preference for the plaintiff's chosen forum is significant." *Id*.

### *B. Analysis*

The relevant question here is whether venue is proper because substantial events leading to plaintiff's claims occurred in Kansas. Defendant contends that a connection between plaintiff's claims and Kansas is missing. Defendant focuses on the circumstances of the contract—arguing that the contract was last signed and became effective in Missouri; defendant provided contractual services in Missouri; and payments for plaintiff's medical care were drawn from Missouri banks. Defendant also focuses on the fact that the contract is a Missouri contract.

But, as previously noted, plaintiff signed the contract in Kansas; defendant negotiated and paid medical providers located in Kansas; defendant made payment demands to plaintiff (who was located in Kansas); and defendant intervened in plaintiff's Kansas personal-injury lawsuit. The claims are based on defendant's alleged failure to use plaintiff's private health insurance; charging of excessive interest rates; and charging of sums greater than defendant actually paid. Given the court's deference to a plaintiff's chosen forum, venue is proper in Kansas because a substantial part of the events or omissions giving rise to plaintiff's claims occurred in Kansas. The court therefore denies defendant's motion to dismiss based on improper venue.

## IV. Transfer of Venue

### *A. Legal Standard*

A court, in the interest of justice, may cure improper venue by transferring the case to "any district or division in which it could have been brought." 28 U.S.C. § 1406(a); *Elec. Realty Assocs., L.P. v. Paramount Pictures Corp.*, 935 F. Supp. 1172, 1177 (D. Kan. 1996). But even when venue is proper, federal courts have the option to transfer cases: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a); *see also Black & Veatch Constr., Inc.*, 123 F.

Supp. 2d at 580. Courts determine whether to transfer a case on "an individualized, case-by-case consideration of convenience and fairness." *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991) (citation and internal quotation marks omitted).

Here, the court has found that venue is proper. Nevertheless, defendant argues that transfer is appropriate based on the forum-selection clause in the parties' contract. The court may transfer a case under § 1404(a) when the parties have agreed to litigate in another federal forum. *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 134 S. Ct. 568, 581 (2013) ("When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause."). In fact, the Supreme Court has gone so far as to state, "Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied." *Id.*

"In the typical case not involving a forum-selection clause, a district court considering a § 1404(a) motion . . . must evaluate both the convenience of the parties and various public-interest considerations." *Id.* But because a forum-selection clause is involved here, the rules are different: (1) "[T]he plaintiff's choice of forum merits no weight" and "the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted"; (2) The parties' private interests are irrelevant; and (3) "[W]hen a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules." *Id.*

Forum-selection clauses are "prima facie valid and should be enforced" unless the party resisting transfer shows that they are "unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 15 (1972). "[T]he controlling factor in governing enforcement of a venue provision in any agreement by confining

venue to a specific court is whether the parties intended to commit the actions to that court to the exclusion of all others." *SBKC Serv. Corp. v. 1111 Prospect Partners, L.P.*, 105 F.3d 578, 582 (10th Cir. 1997).

### *B. Analysis*

Transfer to the United States District Court for the Western District of Missouri under 28 U.S.C. § 1404(a) is proper because the contract's forum-selection clause dictates the proper forum if litigation arises out of the parties' dealings. Plaintiff does not argue that the forum-selection clause is unreasonable, unjust, or invalid due to fraud or overreaching. Instead, plaintiff believes the forum-selection clause does not apply to her claims because she is not seeking to enforce or interpret the contract's provisions.

Plaintiff's argument is not persuasive. Plaintiff seeks to challenge defendant's "business practices and respond to defendant's attempts to obtain a lien." (Doc. 8 at 16.) The parties' contract, however, is central to defendant's business practices and governs the parties' obligations. The following examples demonstrate the contract's relevance:

- Plaintiff's first claim directly alleges that defendant violated the parties' agreement. The court will ultimately examine the agreement to make such a determination.

- Plaintiff's second and third claims allege deceptive and unconscionable business practices. The court must examine the parties' agreement to determine the anticipated practices and duties under the contract.

- Plaintiff's fourth claim alleges unfair practices under the FDCPA, but the court must interpret the agreement to determine what collection practices are available pursuant to the contract.

- Plaintiff's fifth claim alleges the agreement violates Kansas public policy. A court must interpret the agreement to make such a determination.

Each of these claims relates to the contract and requires some level of contract interpretation. Plaintiff's claims relate directly to the parties' initial agreement. The forum-selection clause therefore applies.

The clause provides for exclusive Missouri venue: "Client waives any objections to and agrees to the exclusive jurisdiction and venue of any cause of action being vested in the state and federal courts located in Christian County, Missouri." (Doc. 1-1, ¶ 23.) The clause's language signals a clear intent by the parties to litigate any claims arising from the parties dealings exclusively in Christian County, Missouri courts.

In sum, a transfer of venue is proper because the forum-selection clause mandates venue exclusively in Missouri courts. Considerations of justice and fairness dictate that a transfer is appropriate. The court therefore grants defendant's request to transfer the case to the United States District Court for the Western District of Missouri.

**IT IS THEREFORE ORDERED** that defendant's motion to dismiss or transfer (Doc. 6) is granted in part and denied in part. The court denies defendant's request to dismiss, but grants a transfer to the United States District Court for the Western District of Missouri.

Dated this 28th day of August, 2014 at Kansas City, Kansas.

                                         s/ Carlos Murguia
                                         **CARLOS MURGUIA**
                                         **United States District Judge**