IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| REENA CRISLER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No.: 6:14-CV-03373-SRB |
| ) | |
| MATTHEWS RICHARDS ) | |
| HEALTHCARE MANAGEMENT, LLC, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## ORDER

Before the Court are the parties' cross-motions for summary judgment. For the reasons stated below, Defendants Matthews Richards Healthcare Management, LLC and Kevin M. Atwells' Motion for Partial Summary Judgment (Doc. #87) is granted in part and denied in part. Defendants' motion is granted to the extent Plaintiff attempts to state Kansas Consumer Protection Act claims against Defendant Atwell that accrued before December 14, 2011, and Defendants' motion is further granted as to Count IV – Violation of Fair Debt Collection Practices Act. Defendants' motion is denied in all other respects. Plaintiff Reena Crisler's Motion for Partial Summary Judgment Against Defendants Matthews Richards Healthcare Management, LLC and Kevin M. Atwell (Doc. #92) is denied in its entirety.

**I.  Legal Standard**

Both parties move for partial summary judgment. A moving party is entitled to summary judgment on a "part of [a] claim or defense" . . . "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those "that might affect the outcome of the suit under the

governing law," and a genuine dispute over a material fact is one "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986).

"Summary judgment is appropriate if the evidence, viewed in the light most favorable to the [nonmovant] and giving [the nonmovant] the benefit of all reasonable inferences, shows there are no genuine issues of material fact and [the movant] is entitled to judgment as a matter of law." *Price v. N. States Power Co.*, 664 F.3d 1186, 1191 (8th Cir. 2011) (citation omitted). "Once the moving party has made and supported their motion, the nonmoving party must proffer admissible evidence demonstrating a genuine dispute as to a material fact." *Holden v. Hirner*, 663 F.3d 336, 340 (8th Cir. 2011) (citation omitted). A party opposing summary judgment "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." *Thomas v. Corwin*, 483 F.3d 516, 526–27 (8th Cir. 2007) (citation omitted). Summary judgment should not be granted if a reasonable jury could find for the nonmoving party. *Woodsmith Publ'g Co. v. Meredith Corp.*, 904 F.2d 1244, 1247 (8th Cir. 1990) (citing *Anderson*, 477 U.S. at 248).

**II.     Background**

Many of the facts relied on by the parties are uncontroverted. Considering the parties' factual positions as well as the record made at the in-person hearing held on September 25, 2015, in the light most favorable to the non-moving party, the Court finds the relevant facts to be as follows:

Plaintiff was involved in an automobile accident on November 24, 2010. Plaintiff, a resident of Sedgewick County, Kansas, hired attorney Sean Brennan, a lawyer based in Wichita, Kansas, to represent her in the personal injury lawsuit stemming from her accident. Plaintiff told Mr. Brennan she had concerns about medical expenses and her high-deductible health insurance, and Mr. Brennan recommended Matthews Richards' services to Plaintiff. Defendant Atwell, a Missouri resident, on behalf of Matthews Richards, a Missouri limited liability company, marketed to Kansas attorneys in an effort to locate Kansas clients for Matthews Richards. Plaintiff understood that by entering into the Client Agreement, Matthews Richards would arrange for and pay for Plaintiff's healthcare services but would delay collection until after the conclusion of Plaintiff's personal injury suit.

Plaintiff received a Client Packet from Matthews Richards by email, which included the Client Agreement and the Client-Attorney-MRHM Lien. Plaintiff executed both documents on January 5, 2011, and mailed the executed documents to Matthews Richards on January 8, 2011. Defendant Atwell signed the documents on behalf of Matthews Richards on January 18, 2011. Paragraph 14 of the Client Agreement provides:

> Client agrees that [Matthews Richards] may utilize all available resources to prepay Client's healthcare. This may include Medicare, Medicaid, private insurance, Personal Injury Protection benefits, grants, or any other available source. In the event that no resources are identified or are available, [Matthews Richards] will advance payment for the healthcare services of the Client pertaining to the injury. [Matthews Richards] will be entitled to reimbursement of these healthcare costs as invoiced by the healthcare providers and as otherwise provided herein, together with interest from the date of first invoice for the medical services provided through the date of payment at the rate of 9.5% per year. Any excess funds obtained from available resources will be returned to Client's Attorney for distribution to the Client.

Paragraph 15 of the Client Agreement provides:

> Client hereby agrees that any invoiced amounts to [Matthews Richards] from any healthcare provider for services rendered to Client pursuant to this Agreement

3

> shall constitute a contractual lien upon any settlement, in part or in whole, of the Client's claim, or any payment of Client's claim, upon any award, judgment or other source obtained by Client in connection with the Claim. Client further authorizes his or her attorney to pay the full amount of the lien to [Matthews Richards] directly from the proceeds of settlement, award, judgment or other source to the extent full payment can be made from such proceeds and, in the event full payment cannot be made from such proceeds, Client will pay the entire balance upon demand from [Matthews Richards].

Between January 14, 2011, and May 6, 2011, Matthews Richards arranged for and Plaintiff received medical services and supplies from multiple providers in Kansas. Plaintiff attempted to terminate the Client Agreement on or after May 12, 2011. Sometime after May 12, 2011, Matthews Richards paid Plaintiff's medical providers a negotiated-rate for the services Plaintiff received between January 14 and May 6. Mathews Richards then billed Plaintiff for the full invoiced amounts plus interest. Plaintiff's insurance was never utilized. Though the parties dispute who intervened, Matthews Richards and/or Defendant Atwell intervened in Plaintiff's personal injury suit in Kansas on or around January 16, 2014, in an effort to have their interest in Plaintiff's settlement proceeds determined. The Defendants' claimed lien represented the total amount invoiced by Plaintiff's medical providers plus interest, an amount which exceeded what Matthews Richards paid the providers on Plaintiff's behalf.

Plaintiff's original complaint was filed against Matthews Richards as the sole defendant on January 10, 2014, in Sedgewick County, Kansas. Mathews Richards removed the case to the United States District Court for the District of Kansas on February 28, 2014. Plaintiff filed an Amended Complaint on December 24, 2014, adding Defendant Atwell as a party. On August 28, 2014, the Honorable Carlos Murguia of the District of Kansas transferred the case to the Western District of Missouri pursuant to a forum-selection clause, paragraph 23, in the Client Agreement, which provides:

> [Matthews Richards'] performance pursuant to this Agreement is limited to the State of Missouri and any obligations hereunder to be performed by it shall be exclusively within the State of Missouri, [Matthews Richards] and Client agree that this Agreement, regardless of situs of final signature, shall be deemed to be executed in Christian County, Missouri, and that it is a Missouri contract entered into under the laws of the State of Missouri. Further, in the event legal action is required to enforce or interpret the provisions of this Agreement, Client waives any objections to and agrees to the exclusive jurisdiction and venue of any cause of action being vested in the state and federal courts located in Christian County, Missouri.

The operative, Second Amended Complaint includes the following counts: Count I – Declaratory Judgment – Breach of Contract against Matthews Richards; Count II – Violation of Kansas Consumer Protection Act – Deceptive Trade Practices against Matthews Richards and Atwell; Count III – Violation of Kansas Consumer Protection Act – Unconscionable Acts and Practices against Matthews Richards and Atwell; Count IV – Violation of Fair Debt Collection Practices Act against Matthews Richards; and Count V – Rescission against Matthews Richards. Matthews Richards also has counterclaims pending against Plaintiff, which are not at issue in the present motions. By their motion for partial summary judgment, Defendants seek to dismiss Counts II and III on three alternative and independent bases: 1) Missouri law governs disputes arising from the Client Agreement; 2) the KCPA claims are barred by the applicable statute of limitations; and 3) no genuine issue of material fact remains in that the undisputed facts show Plaintiff cannot establish one or more necessary element of each KCPA claim. Finally, Defendant seeks to dismiss Count IV on the basis that Matthews Richards is not a "debt collector," and Matthews Richards only attempted to collect amounts explicitly authorized by the Client Agreement. Plaintiff, by her motion for partial summary judgment, seeks a ruling that no genuine issue of material fact remains, and the Court should enter judgment in her favor on the KCPA claims.

5

## III. Discussion

### a. Kansas Consumer Protection Act, K.S.A. § 50-623, *et seq.*

"[The KCPA] shall be construed liberally . . . to protect consumers from suppliers who commit deceptive and unconscionable practices" in connection with consumer transactions. K.S.A. § 50-623(b). In relevant part, "[d]eceptive acts and practices include. . . (2) the willful use, in any oral or written representation, of exaggeration, falsehood, innuendo or ambiguity as to a material fact; [and] (3) the willful failure to state a material fact, or the willful concealment, suppression or omission of a material fact[.]" K.S.A. § 50-626(b)(2)-(3). "[W]hether [a supplier] engaged in a deceptive act in violation of the KCPA typically is a jury question." *State ex rel. Kline v. Berry*, 35 Kan. App. 2d 896, 904 (Kan. Ct. App. 2006).

The KCPA prohibits suppliers from engaging in "any unconscionable act or practice in connection with a consumer transaction . . . whether it occurs before, during, or after the transaction." K.S.A. § 50-627(a). Whether a supplier engaged in an unconscionable act is a question for the court considering, but not limited to, the following factors:

> (1) The supplier took advantage of the inability of the consumer reasonably to protect the consumer's interests because of the consumer's physical infirmity, ignorance, illiteracy, inability to understand the language of an agreement or similar factor;
>
> (2) when the consumer transaction was entered into, the price grossly exceeded the price at which similar property or services were readily obtainable in similar transactions by similar consumers;
>
> (3) the consumer was unable to receive a material benefit from the subject of the transaction;
>
> (4) when the consumer transaction was entered into, there was no reasonable probability of payment of the obligation in full by the consumer;
>
> (5) the transaction the supplier induced the consumer to enter into was excessively onesided in favor of the supplier;

6

Case 6:14-cv-03373-SRB   Document 113   Filed 10/14/15   Page 6 of 13

> (6) the supplier made a misleading statement of opinion on which the consumer was likely to rely to the consumer's detriment; and
>
> (7) except as provided by K.S.A. 50-639, and amendments thereto, the supplier excluded, modified or otherwise attempted to limit either the implied warranties of merchantability and fitness for a particular purpose or any remedy provided by law for a breach of those warranties.

K.S.A. § 50-627(b).

"A consumer who is aggrieved by a violation of [the KCPA] may recover . . . damages or a civil penalty . . . whichever is greater." K.S.A. § 50-634(b). Here, Plaintiff seeks a civil penalty in the maximum amount allowed by law for each KCPA violation. (Doc. #72, ¶ 22, 27). The parties agree that the three-year statute of limitations found in K.S.A. § 60-512(2) applies in this circumstance. Further, the KCPA includes an anti-waiver provision providing "a consumer may not waive or agree to forego rights or benefits under this act." K.S.A. § 50-625(a).

Plaintiff alleges Defendants committed deceptive acts or practices by "charging Plaintiff for sums greater than those advanced on Plaintiff's behalf, and by charging interest on those sums and by making misrepresentations regarding the amounts incurred and the amount of interest charged[.]" (Second Amended Complaint, Doc. #72, ¶ 21). Plaintiff alleges the same actions constituted unconscionable acts and practices by Defendant but also that Defendant committed unconscionable acts and practices by "asserting lien rights based on amounts not paid and claiming unconscionable and usurious interest amounts" . . . '[thereby] prevent[ing] distribution of settlement proceeds in an effort to collect the amount it claims." (Doc. #72, ¶¶ 25-26).

### Choice of Law

Defendants argue "the KCPA is not applicable because Missouri law exclusively applies to all causes of action integrally related to the Client Agreement." (Doc. #88, p. 12). The parties

agree that Missouri choice-of-law rules apply to this issue. Defendants direct the Court to paragraph 23 of the Client Agreement, *supra*, which Defendants argue is a valid and enforceable choice-of-law provision requiring the application of Missouri law. Notably, Plaintiff does not argue that the contractual provision at issue lacks the requisite specificity to be considered a binding choice-of-law provision covering all of Plaintiff's claims, both contractual and non-contractual. Rather, Plaintiff argues, "When parties to a contract include a choice-of-law provision in their agreement, Missouri courts apply the factors outlined in Section 187 of the Restatement to determine the validity of the choice-of-law provision." (Doc. 97, p. 19). Because the outcome is the same either way, the Court focuses on Plaintiff's argument under the Restatement.

The Restatement provides in relevant part:

> The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless . . . application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Restatement (Second), Conflict of Laws, § 187(2)(b). Initially, the parties disagree over which state's law would apply in the absence of an effective choice-of-law provision. Defendants characterize the agreement as one for the *arrangement* of medical services, which Matthews Richards performed in Missouri. Plaintiff counters that the focus of the agreement was to allow her to receive necessary medical treatment, which she received in Kansas. Considering the totality of the circumstances – including Plaintiff's residency, Defendants' admitted solicitation to Kansas lawyers, and Plaintiff's receipt of medical services in Kansas – in relation to the

factors outlined in Section 188 of the Restatement, this Court finds that Kansas law would apply in the absence of a contractual choice-of-law provision.

Further, this Court is persuaded by the Eastern District of Pennsylvania's application of Section 187(2)(b) in substantially similar circumstances. *See Stone Street Svs, Inc. v. Daniels*, No. Civ. A. 00-1904, 2000 WL 1909373, *3-6 (E.D. Pa. Dec. 29, 2000). The court concluded, "Given all of these factors, including the purposes of the Kansas consumer protection law, the explicit non-waiver provision, the unequal bargaining power of the parties, and the materially greater interest of Kansas in having its consumer protection law applied in such circumstances, the court concludes the Agreement's choice of law provision cannot and should not be applied in this context." *Id.* at *5. For the same reasons, this Court holds that the Client Agreement does not preclude Plaintiff's KCPA claims.

## Statute of Limitations

Plaintiff filed the original complaint against Matthews Richards on January 10, 2014, and her KCPA claims against Matthews Richards must have accrued on or after January 10, 2011, to be timely filed. Defendants argue that Plaintiff's KCPA claims accrued on January 8, 2011, the date Plaintiff mailed the Client Agreement with her signature to Matthews Richards, and are therefore untimely. On January 8, 2011, however, Plaintiff was not "aggrieved" by Defendants' alleged KCPA violations, a necessary element to Plaintiff maintaining a private right of action under the KCPA. K.S.A. § 50-634(b); *see also Golden v. Den-Mat Corp.*, 47 Kan. App. 2d 450, 471 (Kan. Ct. App. 2012) (finding statute of limitations on KCPA claim did not begin to run the moment plaintiff received a brochure containing false statements but rather, when the plaintiff became "aggrieved" or suffered a loss as a result of the statements); *Rinehart v. St. Luke's South Hosp., Inc.*, No. 10-2209-SAC, 2011 WL 3348234, *9 (D. Kan. Aug. 3, 2011) ("The court

frankly is convinced from its plain reading of K.S.A. 50-634, as interpreted by the Kansas Supreme Court in *Finstad*, that a consumer cannot successfully prosecute any private remedy action under the KCPA unless the violation has 'aggrieved,' *i.e.* resulted in an 'injury or loss to' that consumer."). The Court need not determine the day each alleged KCPA violation accrued because the record establishes that each violation necessarily accrued on or after January 10, 2011, and Counts II and III are therefore timely stated against Matthews Richards.

Plaintiff amended her complaint adding Defendant Atwell on December 24, 2014. Plaintiff does not argue that the addition of Atwell relates back to the filing of the original petition, and Plaintiff's KCPA claims against Atwell must have accrued on or after December 24, 2011, to be timely filed. The Court determines that there is at least one alleged KCPA violation that accrued on or after December 24, 2011, about which a genuine issue of material fact remains to be decided, *i.e.,* the filing of a lien against Plaintiff's settlement proceeds in Kansas in an amount greater than what Defendants paid to medical providers on Plaintiff's behalf. *See Via Christi Regional Med. Ctr., Inc. v. Reed*, 298 Kan. 503, 520-523 (Kan. 2013) (holding the filing or enforcement of a lien in connection with a consumer transaction can constitute a KCPA violation upon proof of the elements of a deceptive or unconscionable act). The parties genuinely dispute Atwell's involvement in the filing of the lien but do not dispute that the lien was filed on or around January 16, 2014. As a result, Plaintiff's KCPA claims against Atwell are dismissed to the extent they relate to alleged KCPA violations that accrued on or before December 24, 2011, but are not dismissed in their entirety.

## Genuine Issues of Material Fact

Both parties argue they are each entitled to judgment as a matter of law on the KCPA claims. The Court finds, however, that genuine issues of material fact remain to be decided

10

precluding summary judgment in either party's favor. As previously stated, whether an act or practice is deceptive is usually a jury question, and the Court finds genuine issues of material fact remain for the jury's consideration. For example, Plaintiff alleges Defendants willfully failed to inform Plaintiff her insurance would not be utilized when the Client Agreement provided otherwise. A genuine issue remains to be decided regarding whether this omission was material to Plaintiff given her testimony that she told her personal-injury attorney she was concerned about her high deductible.

The Kansas Supreme Court has held, "'The cases seem to support the view that there must be some element of deceptive bargaining conduct present as well as unequal bargaining power to render the contract between the parties unconscionable.'" *State ex re. Stovall v. ConfiMed.com, LLC.*, 272 Kan. 1313, 1321 (Kan. 2002) (quoting *William v. Ewen*, 230 Kan. 262, 266 (Kan. 1981)). As previously stated, Plaintiff alleges Defendants willfully failed to inform Plaintiff her insurance would not be utilized when the Client Agreement provided otherwise, and at the very least, a genuine issue remains as to whether the alleged omission was material to Plaintiff. These fact issues impact a finding of deceptive bargaining conduct.

Also, there remains a genuine dispute of material fact regarding whether the parties were of unequal bargaining power. Defendant argues Plaintiff's personal injury lawyer could have read and advised her on the Client Agreement. Plaintiff counters that the lawyer did not represent her in connection with the Client Agreement and could not have provided any advice regarding whether she should enter into the agreement. The parties also present conflicting evidence relating to whether the Client Agreement was excessively onesided in Matthews Richards favor, one of the factors the Court must consider under K.S.A. § 50-627(b). While

11

unconscionability ultimately will be decided by the Court, the Court cannot resolve the parties' conflicting evidence at this stage, and summary judgment is denied.

### b. Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.*

"The Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, *et seq.*, imposes civil liability on 'debt collector[s]' for certain prohibited debt collection practices." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 576, 130 S. Ct. 1605, 176 L.Ed.2d 519 (2010). The FDCPA regulates debt collectors but "does not regulate creditors' activities at all." *Schmitt v. FMA Alliance*, 398 F.3d 995, 998 (8th Cir. 2005) (citation omitted). The FDCPA defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The FDCPA defines "creditor" as "any person who offers or extends credit creating a debt or to whom a debt is owed[.]" 15 U.S.C. § 1692a(4). "A creditor . . . is a company that collects debts owed to itself, in it [sic] own name." *Schlotman v. Citibank (S. Dakota), N.A.*, No. 06-0803-CV-W-DW, 2007 WL 1425474, at *1 (W.D. Mo. May 10, 2007) (citations omitted).

In ruling on this issue at the motion to dismiss stage prior to the case being transferred to this Court, Judge Harpool held, "Viewing the substance of the parties' transactions, the Court concludes that the Petition contains sufficient factual matter on its face, taken as true, to suggest Defendant is plausibly a debt collector under the FDCPA." (Doc. #35, p. 5). In so holding, Judge Harpool stated, "Defendant is free to re-argue the debt collector issue in a dispositive motion following discovery. Here, the Court has no evidence of: . . . (2) the work done/charges accrued by Defendant prior to the time of Plaintiff's termination notice[.]" (Doc. #35, n.2). It is

now established as an undisputed fact that Matthews Richards attempted only to collect invoiced amounts for medical services Plaintiff received prior to Plaintiff's attempted termination of the Client Agreement. Matthews Richards points to the Client Agreement between it and Plaintiff as the source of its entitlement to collect such invoiced amounts. Whether Matthews Richards is entitled to such invoiced amounts under the contract remains an issue for trial. The Court, however, finds that Matthews Richards was acting as a creditor and not a debt collector in attempting to collect these amounts, and Count IV is therefore dismissed.

## IV. Conclusion

For the foregoing reasons, it is hereby ORDERED: Defendants Matthews Richards Healthcare Management, LLC and Kevin M. Atwells' Motion for Partial Summary Judgment (Doc. #87) is GRANTED IN PART AND DENIED IN PART. Defendants' motion is granted to the extent Plaintiff attempts to state Kansas Consumer Protection Act claims against Defendant Atwell that accrued before December 14, 2011, and Defendants' motion is further granted as to Count IV – Violation of Fair Debt Collection Practices Act. Defendants' motion is denied in all other respects. Plaintiff Reena Crisler's Motion for Partial Summary Judgment Against Defendants Matthews Richards Healthcare Management, LLC and Kevin M. Atwell (Doc. #92) is DENIED.

IT IS SO ORDERED.

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

Dated: October 14, 2015